The 4th District Appellate Board of the State of Illinois has now convened. The Honorable James A. Knecht presiding. You may be seated. This is our first case this morning. Joseph Sharpe v. Cindy Birkhold as trustee. For the appellate, Mr. Arima. And for the athlete, Mr. Jump. You may proceed. Yes, Your Honor. Thank you. May it please the court, counsel, I had my associate, Tyler Rutherington, who handled the matter in the trial court, to keep me on track here, hopefully. The case, obviously, you know, is up here on 2619, a motion being granted. And I think the first thing we have to get our arms around is make sure we're dealing with the right standard of review. And I noted that it's a 2619 motion. It's also interpretation of a judgment or contract. And there was no evidentiary hearing that took place. So we think de novo review is the pertinent standard. I know that in the opposing brief, some case law that says you can use an abuse of discretion standard if you are dealing with a judge interpreting his own order. Well, that may be all well and good. But we have Judge Mack in our case interpreting an order from Judge Borden way back in the 1990s. So I don't think that that, unless he has some way of having some special interpretation of Judge Borden's mind from 30 years ago, I don't think we can have an abuse of discretion standard in this case. Now, with that in mind, and certainly I don't want to insult the intelligence of the court on what we do under 2619, but I think it bears emphasis that our position is that the trial court violated some pretty basic precepts, which are one, that the defendant under 2619 has to completely and conclusively refute the plaintiff's claim. And we all heard a rule about you can't basically kick a case out if there's any set of facts that might be proved that would entitle a plaintiff for relief. And there's liberal construction. And you're not just to look at what the hard record is, but you can look at what the reasonable inferences are from that. And if there are reasonable differences of opinion and reasonable inferences, the court can't pick and choose those. We also have some general rules in this case that we think the trial judge did not abide by. One, of course, is just the basic four corners rule. The other is that the specific provisions control the general here. It looks to me like he's trying to take some general provisions, like a definition of Joe, the petitioner, as a child, and somehow engraft that on and have it control a specific sentence that deals with life insurance. But isn't that the purpose of a definition, so that it would control throughout? Well, I would say not in this particular instance. It may be in other situations, and that's where I'm really going. I see the case law that's developed as really having a pretty bright line test that life insurance is kind of its own animal. And if you take a look, and I know the court has probably reviewed these cases, there's one from this district Justice Steigman wrote. It's about 30 years ago. And there's also this IDS case from the first district. Now, there's some other cases that I know that the other side has relied on, but I don't think those have any bearing on the case, because those clearly, clearly say you have, you know, the insurance benefit is for the minor child or for the minor children, or even goes further and says during the period of their minority, so that the insurance would automatically terminate when the person, you know, the child turned 18. We don't have that here. We have this language at all times. We have this being irrevocable. I think it's also important for the court to take note. In a number of these cases, when you're dealing, I do, for whatever it's worth, I do some divorce work enough to be dangerous. One of the things I would mention is that when you're dealing with life insurance, oftentimes what you can have is made absolutely clear that this is just something that is to guarantee, let's say, maintenance or guarantee child support, so that if father dies at age, and the child is 15, he's going to still be able to get his support and possibly education expenses. But here, we don't have that. We don't have it made clearly tied to that type of a life insurance order. I think that the life insurance here, as I said, the IDS case and the Perkins case, they didn't even have the at all times language. And I think Justice Steinman's point is well taken that if you don't have an age limitation and it reads like it's for the benefit of a person, I think if there's no deadline put on it, you cannot necessarily assume as a matter of law that it's going to terminate at majority. The cases that we cite show that there's approval of cases for the notion that there could be life insurance extending such that the person who is the beneficiary is already... Is he the only person that it would have applied to at the time of the divorce settlement? Yes. He was the only child of that marriage. Well, does that make it different? I mean, there's nobody else that you would need to name if you were trying to provide protection whether life insurance protection during minority or from your view forever. Right. Well, I would agree with you that from the standpoint of there's no other child. Obviously, the court knows what happened here is in the second marriage, we ended up with three other children. Now what we're fighting about is whether our guy gets $250,000 or gets a half a million, plain and simple, which obviously is not any small potatoes to be dealing with. But I think it's important that, as I've said, what I've seen done a lot is this notion that the insurance of the... Let's say it's the father. I hate to sound sexist, but for purposes of our case, the father. The father has the insurance coverage. And what he does, what the order is, or what the agreement is, is that the insurance actually names mom for the benefit of the child or children. Here I think there's an inference that there's something more than this is just related to child support. It's named irrevocably and it's naming Joe, the child, not the mom for the benefit of the child. So I think that's an important distinction. You seem to be saying it wasn't clear enough here. My question to you is this. We know that the obligations of support normally don't go beyond minority, right? Well, barring disability and college. College is its own area. So for just general support, wouldn't we be wise to be looking for explicit language when we want it to go, when the parties want it to go beyond the age of 18? Well, I would say the way I read the cases and the way I read Justice Steinman's opinion, it's the opposite. And that's all I can say. That's the way I read it. It seems pretty clear. But that case didn't have the definition down here, did it? No, it didn't. But one thing about the IDS case I think that's important. That was the one where you had the language of children for the life insurance policy and then it said minor children for the medical and some of the other dental, some of the other benefits, and they said you can't engraft one onto the other. The fact that you didn't specifically say it was the minor child for the life insurance, that that meant it would not be so considered. But nowhere else in the agreement do we have reference to minor children, right? So by that token, would the health care obligation continue past minority? Would the other obligations continue past minority? Would support continue past minority? Okay. I understand exactly what the court is concerned about, and that is, yes, this divorce decree does specify minor child from the standpoint of medical and regular support, which would end at 18 or high school unless there was disability or post-high school education, which we all know about. One thing I think it's important to note, I don't think that the notion that this is necessarily just a child support issue here is really the case. And the reason why I say that is if you take a look at the statute 503B5, that's obviously the marital property statute, and that's the statute that says if you have existing insurance, the trial court can divide it, can figure out who's the beneficiary, who's going to pay for it. So my point is that this is not necessarily a child support guarantee, that this actually could be more the nature of a property disposition that really can't be modified so that when the argument is made that he's named as the child, and there's other arguments as the court is aware that the defendant is saying that when the mother, when Judith filed her brief, she made it sound like she was asking for insurance for the support of the child. But does he still owe child support because it didn't say child support during the child's minority? No, but I would say there the statute specifically says the support part of it ends. And obviously we know we have Obamacare and everything where medical can extend beyond. But I find a difference between life insurance, which obviously can last, and someone physically can say I'll keep life insurance in place. What about health insurance and uncovered medical expenses? Do those continue beyond the age of minority? I don't think they are continued. I don't think Obamacare or the Affordable Care Act addresses that. Well, that predated this. I'm saying under the agreement would the father be on the hook for health insurance and uncovered medical expenses beyond the child's minority because it doesn't say it's limited to minority. I think there, because the statute says that those types of financial obligations that are not in the nature of property like life insurance, those terminate automatically. So you don't have to say it's going to end at a certain date. You would have the choice to extend them. That wouldn't violate the statute. That would be saying, hey, I'm making this agreement. I want to provide health care. You could do that. I think you could do that, sure. Well, that's what I want to jump into here for a second. Obviously, from the briefs, the court understands our main argument is that it's so clear that we win. But I think I'm a realist, and I know that you always should have a backup argument, which we do, which is that with all of this language about Judge Mack trying to look at a piece of a brief here and the judge had, this is a different judge that did this. It's frankly kind of a mess, to be frank, with the court. But that's why we think that it certainly wasn't so clear the other way that we shouldn't have an evidentiary hearing on what all this means. You'll know and see in our brief a couple of things. I mentioned one already, and that is the fact that the insurance is named to Joe directly, not as mom for his benefit. I think there's an influence that that shows it was meant to stay for him. Can I ask a question? Sure. The order that we're being asked to look at was Judge Mack's order based on what he was trying to understand Judge Borden's intent was in entering the order as a result of a contested hearing, true? I agree completely. Okay. So did anybody argue what the arguments of the parties were before Judge Borden on the issue of insurance? I believe that the record shows that Judith, the mother, did file a brief on that subject. So was the argument before Judge Borden that it should be life insurance for the rest of Joey's life or that it should be life insurance to cover possible child care expenses? I wish I knew the answer to that, but the record shows that either way, which I guess doesn't do us on either side much help in my view as to what was argued. One of the things I would point out, I know they said in their brief that Judge Borden kind of incorporated his rulings into that judgment. So there's more to it than just the language of the judgment. But keep in mind, you have Judith also arguing for no joint custody and visitation, which Judge Borden said he was adopting her view there. And in that situation, she had noted that the father hadn't paid much in child support, had no contact with the child. And I think it's an inference that the court could have at least been thinking, well, this guy didn't step up to the plate, so now he should keep life insurance going even past majority. Or alternatively, using those same set of facts, that the only way to protect the child to get child support until his majority is to have him covered under the life insurance policy. That's plausible, but again, I'm still wondering whether we can make those types of determinations without some evidentiary hearing. In addition, the father, when he made the trust, he put right in the trust in 2006 when Joe was already past his majority. He put in a specific right in the beginning of the trust. This trust is subject to the obligations of the divorce court. Or I don't know what else there could have been other than life insurance that was still, in our view, that should have still been in place at that point. Did Judge Mack decide this based on information outside the four corners? I think, in my view, he did at least from the standpoint that he tried to, he overrode the at-all-times language by trying to soften it, to try to make it consistent, but I don't think he could do that. But did he consider, in construing the document, anything outside the document? Well, the court may be aware, he ruled once that he thought the language was clear, that there was no obligation. But then the second page of the order, he said, okay, even if it's ambiguous, then I'm going to take a look. And what he did there was he looked at, I mean, it was in the record from the standpoint, he went back and looked at what Judith had argued for before Judge Borden. So in the record, from that standpoint, it was in the record. If it is de novo, are we able to answer the question within the four corners of the document? Well, I think you can, because my point is, if you do, we prevail, because the language can't be changed. We think under this IDS case, the fact that there's some other mention about minor child, that that does not temper or control that life insurance is a special animal. These cases have been on file for years that you have to basically have a specific provision. That's how I read Justice Stegman's case. It was even there the language was for the benefit of the children. He said, you've got to do something more than that. Until it's modified, it still exists. Which I think there's a couple of points that I want to make about that. One, make sure that we know that Judge Borden's order was never, that that paragraph at least, was never modified. And, of course, the other problem we have here is, now we're looking back at what happened so many years ago, no one appealed. I guess one inference would be that Judith thought that there was going to be insurance that was going to go beyond majority, so why should she have had to appeal that? But I suppose Joe may not have appealed because he thought it didn't. Again, those are the types of things I don't think is the province of a 2-6-19 motion. The other thing I want to mention is, right before Joe turned age 18, what's this, like three or four months to go, Judith filed a petition demanding that her ex-husband produce some evidence that he had kept in compliance with the order to maintain the insurance. It seems to me that, from her standpoint, why do that? Unless there was some evidence that he was terminally ill and was going to die before Joe turned 18. So I think there's an inference there that it extends. Well, it could be because the policy metal lapsed, right? Well, but he's not supposed to let it lapse. I think that's the whole point. If he's got an obligation, he's got an obligation. The other point I want to make there is, now that order that was entered, that was three days before Joe turned 18, and all they talked about was that child support was going to terminate at 18, or actually at high school graduation. Everything else from the previous order was going to remain. It seems to me that there's an inference there that even Joe and his attorney knew that this was going to extend beyond majority, because why not just say, oh, by the way, your life insurance obligation is ending in three days. Unless he understood that it was already. I guess that's how we think that there should be an evidentiary hearing, that this is enough of a situation where I don't want to say I'm harassed, but I hate to say that. What's the ambiguity that would necessitate an evidentiary hearing? Well, I think right now the points that I've mentioned will judge, again, in steps. Can I keep going? Yes. Okay. Thank you, Your Honors. I think, obviously, you know my main argument is that it's clear for us, but if it's not, I think it's at least ambiguous enough that with these various factors and the difficulty of dealing with something from that long ago. Now, Judith is still alive, and we never really got into discovery or anything like that. This was just done by a 2619 motion, and my final words were if you take a look at what we put in the trial court record and the points that I've kind of highlighted here today, the only thing that Judge Mack looked at on the ambiguity part of it is she put this in her brief. She must have known that's the end of it. But she didn't. I mean, he picked and chose just one point out of, you know, maybe four or five. So that's where I think the material issue of facts still arises, and we should have a crack at an evidentiary hearing, because that's what you're supposed to do under 2619 if you have a material fact. Thank you. Pleasure to be on the call. Thank you. Good morning, Your Honors. Good morning. Counsel, and may it please the Court, this morning we are asking the Court to affirm the dismissal of the plaintiff's complaint, find that the decedent, Joseph W. Sharp, Jr.'s, bills obligation to maintain a life insurance policy in the amount of $500,000 terminated when the plaintiff reached the age of maturity. We believe that the overall question here is what was the intent of the trial court in the 1994 judgment? And in order to carry out the purpose and intent of that court, we must look to the entire judgment, and we need to construe it reasonably. So we believe this court should look at what was expressly stated in the judgment and to which that is unavoidably and necessarily implied in the judgment. And when doing that, we would ask that the court look to the entire record, to look at the context in which the order was entered. And so that being said... First we have to decide if it's ambiguous, right? Because if it's not ambiguous and we can resolve it within the four corners, that's what we should do, right? I would agree, Your Honor, that the first question we're looking at is whether or not the judgment is ambiguous. However, and this is one of the issues I think that the parties disagree upon, is the idea of contract construction applying to the judgment. And we'd certainly argue that we do interpret it like a contract, but we can't ignore the fact that it's not a contract. It's an order. And so this isn't a marital settlement agreement. This isn't a consent decree like many of the cases that are cited that the parties reference. But this is fundamentally different in the fact that it is an order. So the four corners doctrine is often applied when you look at interpreting a contract and there might be an integration clause or something to that effect in the contract. But we feel in the context of interpreting an order, you need to also look at the context in which the order was entered. An example, I give you, Your Honors, is considering taking a hypothetical here outside the specific facts of this case. Let's say the plaintiff had filed a motion for summary judgment. Defendant and the parties brief the case. They argue the case. The court then issues a written opinion after the argument, followed by a short order,  and having considered the arguments, finding no material issue of fact, place this motion for summary judgment granted, period. Dated sign judge. If the defendant then appeals that order, we would feel that under the plaintiff's interpretation of this, we would be limited to that order. If the defendant was appealing how the court applied the law, how are we going to know how they applied the law by looking at just that order if we don't look at the opinion? In that context, and as that example, is exactly how we draw the meaning from the judgment that's at issue in this case. We have to look at the opinion. That is why, yes, rules of contract construction apply, but it's not the same, and I think you have to consider more outside the specific four corners of that judgment. Now, again, in doing, in applying, well, I'm sorry, contrary to some of the arguments of the plaintiff, we cannot be limited in the interpretation of the judgment to the phrase, quote, at all times, which was used in this judgment, or the life insurance provisional loan. Even the cases that are cited that bring up these life insurance provisions, almost all of them cite to the fact that you review the entire decree, you review the entire order, you review the entire marital settlement agreement. You can't just look at that very specific provision. We don't believe that the plaintiffs have cited any authority that suggests you must focus on that specific provision and not consider the rest of the order, or not consider the rest of the agreement. In doing that and applying the cases cited in the appellee's brief, the trial court's intent, we believe here, can be ascertained from the plain and ordinary language of the judgment. Directing the court's attention to what was paragraph one of the judgment, the trial court stated that the plaintiff shall have sole and exclusive care, custody, and control of Joseph W. Sharp III, parenthesis, Joey, comma, the minor child of the parties, comma, born April 5th, 1983. And we feel that the word minor in this context cannot be treated as surplus. It was not necessary. If the parties, as Your Honor pointed out earlier, they had only one child, they could have just said the child. They could have just put the birth date. They didn't. That's not what the court did. The court explicitly stated Joey, comma, the minor child of the parties. And that's the definition we feel should be applied. That's the definition that's used throughout the judgment. If you looked at many of the other provisions, the provisions concerning health insurance, the provisions concerning child support, the provisions concerning visitation, none of them say child or minor child or some other term. They say Joey. And that is the term that's used throughout the agreement. And, again, I think that's consistent with the cases that have been cited where they are regularly saying look through the entire judgment. How is the term used throughout the judgment? And Joey was used consistently throughout this judgment to have that name. Do you agree with the suggestion that we look at insurance provisions differently than we would look at those other support-type provisions? No. Your Honor, I think the reason is we need to look at the actual language of the entire agreement. Child support, I will say, as opposing counsel pointed out, yes, there's a statutory provision out there stating that it may terminate at a certain time. It terminates in the majority or in the graduations or whichever is later. But, you know, I understand that ruling there. But what's applied to the other provisions? If you look to health insurance, as Your Honor asked about earlier, or visitation, is he supposed to be guaranteed visitation after the age of majority in this situation? No. Is he supposed to provide health insurance past the age of majority here? No. I don't think that was clearly ever intended. So I think to be consistent, to apply the rule consistently, I think we have to go by the same rules how that minority was used throughout the agreement. Unless there's some other language. If this judgment didn't have other language, that there was nowhere we found in any of the other provisions of the judgment does the court otherwise specify that any other obligation that's related to the plaintiff in this case would or would not survive his minority. No, analogous to the case on the mascara, the additional language discusses and schwas that only during the minority of the children was not included here. We acknowledge that. But it also wasn't in the mascara. It wasn't necessary. Why? Because, again, we're talking specifically about the minor child. That minor word is the key difference here. If they just said the child, maybe there's a ruling. But that's not how it was defined. So going back a little bit to what we were discussing earlier, the express language. So while it is implied on how we believe it should be interpreted, but it's also expressly stated in the opening paragraph of the judgment where the court refers back to the January and February written opinion and supplemental decision. The court expressly stated that in the order, stating that his judgment, his ruling is based upon the other evidence, the testimony, the trial, et cetera, and his opinions. That being said, we believe they're incorporated within the judgment. They need to be included as part of interpreting the judgment. And in those written opinions, Judge Borden very clearly stated that he was accepting the plaintiff's recommendation for life insurance. And I know some of this was discussed earlier, but that provision from the plaintiff's, or excuse me, from Judith Sharpe's closing argument in the 1994 case stated that in order to ensure that there will be sufficient funds for Joey's support in the event of Bill's death, Judy requests that Bill be ordered to maintain at all times $500,000 in life insurance. On his life, irrevocably designating Joey as the beneficiary. So while we do believe, and I think this is another difference perhaps between the parties here, the intent that I believe this court should be looking at is the court's intent. Not Judy Sharpe's intent, the court's intent. And that being said, the court very clearly intended to adopt that recommendation. Now, I believe some of the opposing argument is, well, maybe we should have an evidentiary hearing and we should allow Ms. Sharpe to come back and explain her position. I think that's a pretty dangerous precedent for this court to set. That's essentially allowing the party a second bite at the apple, way after any time for modifying the judgment would have ever been permitted. They're asking to, I guess I don't understand if this were to proceed, if the court were to find this ambiguous, which I think the parties generally agree that it's unambiguous. We may disagree on the meaning of the terms, but I think we're generally both arguing that it's unambiguous. If the court were to find it as ambiguous, my question or my concern is, what would an evidentiary hearing look like? Or how would the discovery, would we depose the judge? I've never heard of such a thing. I'm not saying it's not possible, but I think that would be a pretty drastic precedent to set any time that somebody disagrees with the judge, that we're deposing the judge to find out what they meant and why they ordered the way that they ordered. On a similar, again, going back to Judith Sharpe, I don't think that we should be deposing her, putting her on the stand, and offering some different explanation. She had that opportunity. That opportunity was the closing argument. She should have made it in the closing argument. If she meant anything else other than support, she should have stated that in the closing argument. Counsel, so we're clear that the argument that was before Judge Borden was that the life insurance should be to protect child support payments during the minority of the child. Correct. I think that that is the argument that was raised by the plaintiff's argument. Correct. Okay. So furthermore, the plain and ordinary meaning of the language in the judgment are positions that Bill's obligations, again, terminated when the plaintiff reached the majority. When interpreting the judgment as a whole, we, again, maintain the position that it's unambiguous. But the court, when determining whether or not it's ambiguous, the question is, put another way, is the language susceptible to more than one meaning? That's basically what determines whether or not the language is actually ambiguous. And in doing that is where we believe that if you look at the entire order, if you look at the language used elsewhere, construing the agreement reasonably, looking at the context in which it was ordered, is it then at that time susceptible to more than one meaning? If after doing all of that it was susceptible to more than one meaning, then perhaps the court would consider it ambiguous. But we don't believe it's there. So as provided in some of the cases that were cited, just because the parties disagree here does not mean that there's ambiguity. And, again, that is a question of laws before the court. And if for some reason, and I'm saying this, I guess, as an alternative argument, perhaps, if the court were to disagree with our position that a four corners rule would strictly apply to this case, we should not consider the opinion. If the court then were to find it was ambiguous, they certainly should. I don't think that there's any question at that point that they should certainly be considering it, the opinion of court. We don't believe that that's, we think it should be considered before then, but the parties, I think, disagree on that take. I'll briefly touch, because I know opposing counsel brought it up, on the applicable standard of review in this case. We certainly understand that, generally speaking, a Section 2619 motion to dismiss is considered de novo. Questions of law are generally considered de novo. And then we're not disregarding the wide range of cases that support that position. But this is a little bit different. The court is interpreting, Judge Mack is interpreting Judge Borden. I understand the point that it's two different judges. But I guess my response to that is, is that always out of the ordinary? Let's say that, hypothetical again, if you're in a courtroom and you have one judge in December that issues an order, and the judges are on a rotation, and a new judge starts in January, would that change the deference of this court to the trial court? We believe that it wouldn't. And so the point here is that this is a trial court interpreting a prior trial court ruling. Judge Mack's interpreting Judge Borden's ruling. So we do believe some deference should be given to that, that he would be more familiar with that court. He's more familiar with the cases that are before that court in Peoria County. But again, I'm not wavering the point. I fully understand and acknowledge the long line of case law regarding Section 2619 motions applicable standard of review. But I think it's appropriate to some deference. So in conclusion, the defendant would maintain that the language, again, is not ambiguous. And by considering the entire judgment, including the portions that were expressed and necessarily and unavoidably implied, along with the context in which the order was entered in the record, this court should find that Bill's obligation to maintain the life insurance policy terminated when the plaintiff reached the age of majority, that the plaintiff had no vested interest in the life insurance policy upon Bill's death, and that the order of the trial court in this case should be affirmed. Thank you, Your Honor. Thank you, Your Honor. I said Mr. Reeve of the first. Do you pronounce it that way? If you have it right. Well, very good. Thank you. Sometimes I even sign in and put in parens, R-E-E-E-V-A. I will try to make this brief. I think clearly this is de novo not only on the interpretation, but it's de novo just to determine whether there is even an ambiguity in the order. We all know that, I mean, just because someone takes a position doesn't necessarily mean that their interpretation is reasonable. We see that all the time. Four corners rule applies and somebody wins, somebody loses. But I think really here we do have a – each side has a reasonable explanation that I really think that the key to this is that this is at a minimum ambiguous. And I come back to Judge Mack only picked one piece of what had been argued and said, well, she put this in her brief, so that's it. Well, she didn't consider the arguments and the evidence we had about the trust saying right in it that it's subject to the rules and all the other things. I'm not going to repeat that they're all in our brief. I think there's enough here. Can I ask you on that? Sure. The trust came later, right? Right. But the trust came after he turned 18, too. Yeah. So what we're trying to decide is what the original trial judge had in his mind when he wrote what he wrote. How would something that someone did later tell us what the judge thought at the time when the original decree was entered? Well, I would say that everybody has – the husband went through the case itself. I mean, if anybody knew, while this is a very litigious matter, he must have known what his own intent was and maybe that's why he didn't appeal the ruling because he thought he had to pay insurance lifetime. Maybe he didn't think he was ever going to have a second wife and three kids. Isn't the same issue presented with respect to Judith testifying now to things that the trial judge who entered the decree never heard her say? Well, I'm not necessarily saying that that's for sure what we would do. I'm not saying that our position stands on – falls on whether Judith would come into an evidentiary hearing and try to say anything. Right now there's nothing in the record that she would have, as I already said, or would say. But my point is if you're looking at what Judge Borden was thinking, he would have had to have had all the different arguments, all the different points about all of this, that everybody who was arguing this, the lawyers, the people themselves, should have – that they had some input into this. I don't think you can just say we can look only at what Judge Borden was thinking. And I think that's still the biggest problem. So if, as counsel indicated, your client's argument before Judge Borden was that she wanted an insurance policy to ensure the payment of child support during the minority of the child, how can you argue otherwise now? Well, I think that was one of the points I was going to make. If you take a look at that brief, I mean, yes, it uses the word support. But support has meanings beyond just through high school. I mean, support can be in the nature of, you know, he wasn't around, he didn't help the kid grow up, now all of a sudden we're in a divorce. From a standpoint of supporting – I mean, I'm taking counsel as a lawyer. He said that was the argument your client made before Judge Borden, not in a brief. That was the actual argument before Judge Borden, was that they wanted the insurance policy to protect the child support payments should he die prior to the majority of the child. Well, I disagree that that was clearly stated. If he said there was some transcript where there was testimony on the stand, I didn't see any of that. The only thing Judge Mack looked at was just that snippet from the brief that said – Well, I think I agree with you. I don't think that's what Mr. Jump said, but it could be construed that way. Is it – I mean, the relief that the spouse sought was support during the minority of the child. That is specifically referenced, whether it's in a brief or a pleading. That is before the court. Would you – I would agree, but again, we have the issue of college was reserved, so who's to say – I know this is not our particular facts, but what happens if he goes to college, and now three years into college, dad dies? Was he supposed to have – I don't think there's a magic age 18 or graduation from high school, unless it's being specified in the decree. The other thing I wanted to mention, the fact that this was not in an MSA. Justice Steinman said in that Perkins case, it doesn't matter. Okay? So I guess I'm done unless the court has any further questions. Appreciate your time. Thank you. Thank you, gentlemen, for your arguments, and it was a pleasure to have live oral arguments. Thank you. Thank you. Thank you.